**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAFAEL MELENDEZ,

    Plaintiff,

v.

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, *et al.*,

    Defendants.

Civil Action No. 16-8362 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Port Authority of New York and New Jersey's ("Defendant"[1] or the "Port Authority") Motion to Dismiss the Amended Complaint of Plaintiff Rafael Melendez ("Plaintiff"). (ECF No. 28.) Plaintiff opposed (ECF No. 32) and Defendant replied (ECF No. 33). The Court has considered the parties' submissions and decides

---

[1] Plaintiff's Amended Complaint adds newly named defendants Dr. Michele Kaufman ("Dr. Kaufman") and Dr. Nancy Bloom ("Dr. Bloom"), individually and in their official capacities, to this matter. (*Compare* Am. Compl., ECF No. 27, *with* N.J. Super. Ct. Compl., Ex. A to Notice of Removal, ECF No. 1-1.) Upon review of the docket, it is unclear to the Court whether Dr. Kaufman or Dr. Bloom were ever served. Local Civil Rule 5.1(b) provides, in relevant part, that "proof of service of all papers required . . . to be served shall be filed in the Clerk's office promptly and in any event before action is taken thereon by the Court or the parties." L. Civ. R. 5.1(b). The Court, accordingly, shall refer to the Port Authority as the singular "Defendant" in this matter.

the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendant's Motion to Dismiss is granted.[2]

I. **BACKGROUND**

Plaintiff is a Hispanic male currently employed as a police officer by the New York Police Department ("NYPD"). (Am. Compl. ¶¶ 1, 8, ECF No. 27.) As a condition of his employment with the NYPD, Plaintiff underwent and passed a psychological examination. (*Id.* ¶ 8.) Prior to working for the NYPD, Plaintiff worked as a corrections officer for the New Jersey Department of Corrections for approximately three years, and as a sheriff's officer for the Monmouth County Sheriff's Office for two years. (*Id.* ¶¶ 4, 6.) Plaintiff underwent and passed psychological examinations for both positions. (*Id.* ¶¶ 5, 7.)

On or about November 18, 2015, Plaintiff applied for a position as a police officer with the Port Authority. (*Id.* ¶ 13.) The Port Authority made an offer of employment to Plaintiff, contingent on a successful background check and the completion of medical and psychological examinations.

---

[2] Again, the Court must confront whether Defendant moves to dismiss the Complaint or moves for summary judgment. Although Defendant's motion is docketed as a "Motion to Dismiss," Defendant includes a "Statement of Undisputed Facts Pursuant to [Local Civil] Rule 56.1" (ECF No. 28-24), and Defendant's proposed order states "Defendant's motion for summary judgment is granted" (ECF No. 28-25). The Court previously construed Defendant's Motion for Summary Judgment (ECF No. 21) as a Motion to Dismiss "[b]ecause Defendant ha[d] not yet answered Plaintiff's Complaint" and because Defendant primarily sought "dismissal of claims based on the sufficiency of Plaintiff's pleadings." (July 11, 2019 Letter Op. & Order 1 n.1, ECF No. 26.) Here, the Court finds multiple factors weigh in favor of construing the instant Motion as a motion to dismiss: (1) Defendant's Motion is docketed as a "Motion to Dismiss"; (2) the notice of motion Defendant filed is titled, "Notice of Motion to Dismiss in Lieu of an Answer" (ECF No. 28); (3) the same notice indicates Defendant is seeking "an [o]rder of dismissal with prejudice in favor of Defendant, dismissing Plaintiff's Amended Complaint in its entirety" (*id.*); (4) Defendant's Moving Brief is titled "Brief in Support of [Defendant's] Motion to Dismiss." (ECF No. 28-23); and (5) within Defendant's Moving Brief, Defendant seeks dismissal of Plaintiff's claims (*see, e.g., id.* at 3–4 ("[T]his Court should dismiss Plaintiff's claims based on New Jersey's LAD."). The Court, accordingly, construes Defendant's filing as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

2

(*Id.* ¶ 15.) Plaintiff successfully passed the background check and medical evaluation. (*Id.* ¶ 16.) Dr. Kaufman and Dr. Bloom were retained by the Port Authority to conduct the psychological examinations of officer candidates, including Plaintiff. (*Id.* ¶ 17.) Although a portion of the psychological examinations administered by Dr. Kaufman and Dr. Bloom consisted of a series of standardized questions, "pursuant to the policy and custom of [the] Port Authority, [they] were permitted to ask [P]laintiff random non-standardized questions." (*Id.* ¶ 20.) Plaintiff believed he had passed the psychological examination, in part because Dr. Kaufman and Dr. Bloom did not indicate to him that he had failed. (*Id.* ¶ 21.)

On or about April 27, 2016, Plaintiff received correspondence from the Port Authority stating that it was "unable to certify[] his appointment as a police officer"—without providing any reason for the decision. (*Id.* ¶¶ 22–23.) Despite repeated requests from Plaintiff, the Port Authority did not provide "any documents, test results, [] or any other evidence that [Plaintiff] actually failed the psychological examinations." (*Id.* ¶ 25.) It is the standard policy of the Port Authority, Plaintiff acknowledges, not to "reveal the reasons a particular candidate is rejected" for a specific position. (*Id.* ¶ 26.) Plaintiff avers that this policy is used to hide the "racially discriminatory application of the [Port Authority's] psychological test." (*Id.* ¶ 27.) The subjective evaluation criteria and use of non-standardized questions during the psychological examination has had "a discriminatory and disparate impact [on] non-Caucasian candidates." (*Id.* ¶ 28.) Moreover, Dr. Kaufman and Dr. Bloom administered the "non-standardized portion of the psychological tests to Caucasian candidates and both psychologists 'passed' Caucasian candidates at a substantially higher rate than non-Caucasian candidates using the very same criteria." (*Id.* ¶ 29.)

The Port Authority published or otherwise made available a statistical breakdown of the applicants for the "114th Police Recruit Class." (*Id.* ¶ 30.) Had Plaintiff been hired, he would have

been a member of this class. (*Id.*) Seventy-seven of the 145 Caucasian candidates failed the psychological examination, representing a failure rate of 53.10 percent. (*Id.* ¶ 31.) Forty-five of the seventy Hispanic candidates failed the psychological examination, representing a failure rate of 64.25 percent. (*Id.* ¶ 32.) Twenty-two of the thirty-four Black candidates failed the psychological examination, representing a failure rate of 64.71 percent. (*Id.* ¶ 34.) Black and Hispanic candidates, therefore, failed the psychological examination at a rate eleven percent higher than Caucasian candidates. (*Id.* ¶ 37.) Plaintiff avers that the Port Authority discriminated against him because of his "race, ethnicity[,] and heritage by imposing medical and psychological standards different than the standards imposed on similarly situated non-Hispanic[]" candidates. (*Id.* ¶ 40.) Plaintiff, additionally, alleges that all non-White candidates for Port Authority employment "are being evaluated on an inconsistent and shifting set of standards of physical and psychological fitness," compared to Caucasian candidates. (*Id.* ¶ 41.)

On August 11, 2019, Plaintiff filed an Amended Complaint alleging eight counts against Defendants: Count One, for race and ethnicity discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.* (Am. Compl. *6–7)[3]; Count Two, for "aiding and abetting" in violation of the NJLAD (*id.* at *7–8); Count Three, for lack of enforcement of the NJLAD (*id.* at *8–9); Count Four, for negligent hiring, training, and retention in violation of the NJLAD (*id.* at *9–10); Count Five, for violations of the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983 (*id.* at *10–11); Count Six, for conspiracy to interfere with civil rights, brought pursuant to 42 U.S.C. § 1985 (*id.* at *11–12);

---

[3] Because the pages of the Amended Complaint are not individually numbered, the Court refers to the page number in the ECF header at the top of the page, and denotes such reference with an asterisk. The Court does not refer to the paragraph number of the Amended Complaint for clarity, because the paragraph numbering restarts with each count.

4

Count Seven, for "negligent[] fail[ure] to prevent a conspiracy to deprive . . . [P]laintiff of his constitutional right to be free from discrimination," brought pursuant to 42 U.S.C. § 1986 (*id.* at *12–13); and Count Eight,[4] for violations of Article I, ¶ 1 of the New Jersey Constitution, N.J. CONST. art. I, ¶ 1 (*id.* at *13).

## II. **LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

---

[4] This count is labeled "Count XIII" in the Amended Complaint. (Am. Compl. *13.)

5

## III.   DISCUSSION

### A.   Counts One Through Four: Plaintiff's NJLAD Claims

Defendant argues that Plaintiff's NJLAD claims should be dismissed because, as a bi-state entity, the NJLAD does not apply to the Port Authority. (Defs.' Moving Br. 1, ECF No. 28-23.)

"The Port Authority was created in 1921 by a Compact between New York and New Jersey." *Holley v. Port Auth. of N.Y. & N.J.*, No. 14-7534, 2017 WL 4570801, at *1 (D.N.J. June 8, 2017) (quoting *Pardo v. Port Auth. of N.Y. & N.J.*, No. 08-1311, 2009 WL 689730, at *10 (D.N.J. Mar. 10, 2009). "A bi-state entity, created by compact, is 'not subject to the unilateral control of any one of the States that compose the federal system.'" *Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 281 (3d Cir.2002) (quoting *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 42 (1994)). That is, "the Compact prohibits one state from unilaterally imposing duties on the Port Authority without the concurrence of the sister state." *Holley*, 2017 WL 4570801, at *1 (citation omitted). Accordingly, the law of an individual state "may only be imposed on the bi-state entity when the Compact itself states that the entity is subject to single state jurisdiction." *Id.*

Numerous courts, including the Third Circuit Court of Appeals, have concluded that the NJLAD is not applicable to the Port Authority. *See hip Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 358 (3d Cir. 2012) (affirming the district court's dismissal of the plaintiffs' state-law claims, including an NJLAD claim, and stating that "New Jersey [is] barred from applying its civil rights and construction code statutes to the [Port] Authority"); *Holley*, 2017 WL 4570801, at *1 (denying the plaintiff's proposed amendment as futile because the NJLAD does not apply to the Port Authority); *King v. Port Auth. of N.Y. & N.J.*, 909 F. Supp. 938, 945 (D.N.J. 1995), *aff'd*, 106 F.3d 385 (3d Cir. 1996) (dismissing the plaintiff's NJLAD claim because

6

the NJLAD "may not be applied to the Port Authority"); *see also Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 64–66 (2d Cir. 2000) (explaining that New York and New Jersey's anti-discrimination laws do not apply to the Port Authority); *Evans v. Port Auth. of N.Y. & N.J.*, 192 F. Supp. 2d 247, 281–82 (S.D.N.Y. 2002) ("[T]he respective antidiscrimination laws of New York and New Jersey do not apply to the Port Authority because it is an agency created by an interstate compact.").

In opposition, Plaintiff primary relies on *Santiago v. New York & New Jersey Port Authority*, 57 A.3d 54 (N.J. Super. Ct. App. Div. 2012). (Pl.'s Opp'n Br. 3–4, ECF No. 32.) In *Santiago*, which was decided three months after *hip Heightened*, the Appellate Division affirmed an order dismissing the plaintiff's complaint, including plaintiff's NJLAD claims, for failure to comply with statutory notice provisions. *Id.* at 62. Plaintiff argues that the *Santiago* court held that the Port Authority had consented to suit, *see* N.J. Stat. Ann. § 32:1-157 (governing when the Port Authority consents to suit), and, therefore, the NJLAD is applicable to the Port Authority. (Pl.'s Opp'n Br. 3–4.) Plaintiff cites footnote 3 in *Santiago*, which briefly discussed *hip Heightened*, as further support for his position. (*Id.*) Plaintiff's reliance, however, is misplaced, and Plaintiff's characterization of *Santiago* is inaccurate. Plaintiff's references to *Santiago* primarily consist of passages that are themselves quotations of Section 32:1-157. (Am. Compl. *2–3.) Plaintiff's quotations also omit the first portion of the statute, which states "[u]pon the *concurrence* of the State of New York in accordance with section twelve hereof . . . ." N.J. Stat. Ann. § 32:1-157 (emphasis added). The *Santiago* court did not hold that the NJLAD was applicable to the Port Authority. Instead, the court assumed, *arguendo*, that even if the various state statutes were applicable to the Port Authority, the plaintiff's contention that she was not required to provide pre-

7

suit notification failed. *Santiago*, 57 A.3d at 59. Plaintiff's reliance on *Santiago*, therefore, is not persuasive.

Plaintiff also cites *Burke v. Port Authority of New York & New Jersey*, No. 11-6853, 2012 WL 3314761 (D.N.J. Aug. 13, 2012). (Pl.'s Opp'n Br. 4.) In *Burke*, the district court denied the defendants' motion to dismiss, holding that "the plain language of [the Port Authority's] own contractual amendment consents to application" of the NJLAD. *Burke*, 2012 WL 3314761 at *5. Critically, *Burke* was decided prior to the Third Circuit's decision in *hip Heightened*. *See id.* ("The Third Circuit has not yet addressed whether [the Port Authority] is subject to suit under individual state laws.").

The Court finds that the cases cited by Plaintiff are insufficient to overcome the weight of binding authority. Moreover, Plaintiff has failed to cite a single post-*hip Heightened* case that has found the NJLAD applicable to the Port Authority. The Court, accordingly, grants Defendant's Motion to Dismiss Counts One through Four of the Amended Complaint.

### B.     Counts Five through Seven: Plaintiff's Federal Civil Rights Claims

Plaintiff brings Count Five for violations of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (Am. Compl. at *10–*11). Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. "By its terms, of course, [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Mark v. Borough of Hatboro*,

51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 816, (1985) (plurality opinion)).

To state a claim under § 1983, a plaintiff must adequately allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)). "Section 1983 claims against the Port Authority are analyzed under a municipal liability framework." *Galicki v. New Jersey*, No. 14-169, 2016 WL 4950995, at *7 (D.N.J. Sept. 15, 2016) (citing *Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 383 n.7 (S.D.N.Y. 2002) ("Although the Port Authority, a bi-state agency, is not technically a municipality, courts have treated it as such and have analyzed claims against it under the standards governing municipal liability under [§] 1983.")).

"A municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation." *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282–83 (3d Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). "*Monell* . . . created a two-path track to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom." *McTernan v. City of N.Y.*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citation omitted).

> A government policy or custom can be established in two ways. Policy is made when a *decisionmaker* possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of officials [are] so permanently and well settled as to virtually constitute law. . . . Custom requires proof of knowledge and acquiescence by the decisionmaker.

*Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted) (emphasis added).

Here, much like the original Complaint, the Court finds Plaintiff has failed to adequately allege municipal liability because he has failed to plead facts related to a decisionmaker and whether that decisionmaker had knowledge of or acquiesced in the alleged policy or custom. Plaintiff alleges that the Port Authority has the policy or custom of "permitting its psychologists, *including* Dr. Kaufman and Dr. Bloom, to use subjective criteria in evaluating . . . non-Caucasian candidates," which has had a "discriminatory and disparate impact [on] non-Caucasian candidates." (Am. Compl. ¶ 28) (emphasis added). In so doing, Plaintiff seems to concede that Dr. Kaufman and Dr. Bloom are just two of the psychologists retained by the Port Authority to conduct psychological examinations of applicants, rather than individuals who possess supervisory or decision-making authority. Moreover, Plaintiff's own language, which contends that the Port Authority *permitted* psychologists to use non-standardized questions, appears to vitiate the notion that Dr. Kaufman or Dr. Bloom were decisionmakers with the final authority to establish a municipal policy or custom. (*See id.* ¶ 20 ("[P]ursuant to the policy and custom of [the] Port Authority, Dr. Kaufman and Dr. Bloom were permitted to ask [P]laintiff random non-standardized questions"); *id* at *10 ("[T]he [Port Authority] administered its psychological tests through defendants Kaufman and Bloom.").)

Plaintiff's failure to plead facts related to a decisionmaker, and whether that decisionmaker had knowledge of or acquiesced in that policy or custom, is fatal to his claim. *See e.g., McTernan*, 564 F.3d at 658 ("Equally fatal, the four allegations in the complaint relevant to [the plaintiff's] *Monell* claim fail to allege conduct by a municipal decisionmaker."). The Court, accordingly, finds Plaintiff failed to sufficiently plead a *Monell* claim. Further, because Plaintiff failed to adequately

plead a violation of a right secured by the Constitution or federal law under § 1983, Plaintiff's § 1985 and § 1986 claims also fail. *See e.g., Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 722, 738–39 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014) (finding, *inter alia*, that because the plaintiff failed to establish a predicate civil rights violation, the plaintiff's § 1985 and § 1986 claims necessarily must fail); *see also id.* at 739 (quoting *Koger v. Kaplan, Inc.*, 169 F. App'x 682, 684 (3d Cir. 2006)) ("A § 1986 claim is, by definition, dependent on a pre-existing violation of § 1985(3)."); *see also Mosca v. Cole*, 384 F. Supp. 2d 757, 770 (D.N.J. 2005), *aff'd*, 217 F. App'x 158 (3d Cir. 2007) (holding that the plaintiff's § 1985 claim failed because, *inter alia*, plaintiff failed to establish "any deprivation of his constitutionally protected rights, privileges and immunities").

Because Plaintiff has failed to successfully plead municipal liability, the Court grants Defendant's Motion to Dismiss Counts Five, Six, and Seven of the Amended Complaint.

### C. Count Eight: Violations of the New Jersey Constitution

Finally, Plaintiff brings Count Eight for violations of Article I, ¶ 1 of the New Jersey Constitution, N.J. CONST. art. I, ¶ 1. (Am. Compl. at *13.)

The New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1, *et seq.*, was modeled on § 1983 and similarly "provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws[,] and is not a source of rights itself." *Lapolla v. Cty. of Union*, 157 A.3d 458, 469 (N.J. Super. Ct. App. Div. 2017); *see also Terranova v. Borough of Hasbrouck Heights*, No. 19-12515, 2020 WL 526113, at *9 (D.N.J. Jan. 30, 2020) ("[T]he NJCRA is construed nearly identically to [§] 1983."). "To sustain a § 1983 claim, or a NJCRA claim [for municipal liability], a plaintiff must show that a defendant had in place a custom

or policy which resulted in [a] constitutional deprivation." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (citing *Stomel v. City of Camden*, 927 A.2d 129, 145 (N.J. 2007)).

Here, because the Court finds that Plaintiff failed to adequately plead municipal liability as to his § 1983 claim, the Court finds Plaintiff's NJCRA claim to be similarly deficient. The Court, accordingly, grants Defendant's Motion to Dismiss Count Eight of the Amended Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 28) is granted. The Court, however, will permit Plaintiff one final opportunity to file an amended complaint. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: March 31, 2020